1  LOUIS MATTHEW CLEMENTS
   1637 HENDRY ST.
2  FORT MYERS, FL 33901

3  Plaintiff, Pro Se

4

5

6

7

8  IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF FLORIDA
9  TALLAHASSEE DIVISION

10

11 LOUIS MATTHEW CLEMENTS,                    )
                                              )
12        Plaintiff,                          )   Case No.: *4:23 cv 24 - AW/MAF*
                                              )
13        vs.                                 )
                                              )
14                                            )   COMPLAINT FOR DECLARATORY
   RON DESANTIS, in his official              )   AND EMERGENCY INJUNCTIVE
15 capacity as governor of Florida, and       )   RELIEF
   head of the Florida Legislature,           )
16 ASHLEY MOODY, in her official              )
   capacity as the Attorney General of        )
17 Florida, RICKY D, DIXON, in his            )
   official capacity as Secretary of Florida  )
18 Dept. of Corrections,                      )
                                              )
19        Defendants.                         )

20  _____

21

22  **ATTENTION JUDGE MARK E. WALKER**

23       Plaintiff, Louis Matthew Clements, *Pro Se* (untrained in law), feels it is only

24
    appropriate for the Chief Judge sit on this action. Plaintiff has a conflict of interest
25
    with the Judges in his local Middle District of Florida, Fort Myers Div. for their refusal
26
    to "liberally construe" pro se litigants briefs (See Case 2:20-cv-00310-JES-MRM
27

28

Document 75 Filed 01/13/21 Page 9 of 16 PageID 1138 where the Magistrate nitpicks

Plaintiff's pro se case citations calling them "inapposite"). This is after Plaintiff was

denied change of venue to be under the watchful eye of the chief justice (See Case

2:20-cv-00310-JES-MRM Document 53 Filed 09/11/20 Page 1 of 3 PageID 714).

That Court also failed to properly appoint counsel, especially when warranted.

See Plaintiff's Habeas Proceeding (2:17-CV-396-JLB-NPM), currently pending in the

11th Dist. Court of Appeals (21-12540-JJ), where they DID finally appoint counsel (for

the purposes of oral argument) in this potentially precedent setting case. Also

noteworthy is the fact that appointed counsel stood on his brief.

## NATURE OF ACTION

1.      Plaintiff challenges the Florida Sex Offender Registry a.k.a. the conditions

outlined in FL.S. § 943.0435 and FL.S. § 775.21. Plaintiff also challenges the

*hidden* sex Statute FL.S. § 741.0405 in relation to the registration laws. For the

following reasons, Plaintiff should be "immunized" from complying with FL.S. §

943.0435 and FL.S. § 775.21. He is as innocent as those immunized under FL.S. §

741.0405.

2.      In public, Governor Ron DeSantis, head of the Florida Legislature, along with

Attorney General Ashley Moody fashions themselves as gladiators against sex

offenders, keeping the S.O. laws tough and offenders unable to vote (See

https://www.fdle.state.fl.us/News/2022/August/In-case-you-missed-it-FDLE-

arrests-convicted-murde and

https://www.myfloridalegal.com/newsrel.nsf/newsreleases/B84776A8F88AFE5B8
52587A600674B14.

3.    Governor DeSantis crusades for traditional values, attempts to disenfranchise
many Florida citizens and run afoul of long protected civil rights in the name of
protecting children against gay people, gay teachings, and the word "gay". He's
waging a war on trans people, he thinks it's okay to treat human beings like chattel,
moving immigrants all over the country, he's anti-free speech, particularly the kind
of free speech that says the United States hasn't always been great for non-white
people, he's made it harder for protesters to speak out about injustice and easier for
anti-justice people to hit protesters with their cars, he has no interest in preventing
gun violence. He says, "We reject [this] woke ideology. We seek normalcy not
philosophical lunacy. We will not allow reality, facts, and truth to become optional.
We will never surrender to the woke mob. Florida is where woke goes to die,". (See
https://apnews.com/article/ron-desantis-politics-florida-charlie-crist-
5bba0f85d72f5e6efb88ce98d7eae54d and
https://www.vanityfair.com/news/2022/12/ron-desantis-just-as-bad-as-donald-
trump-2024).

4.    Yet he *has* allowed reality, facts and truth to become optional. And he wants us
not to be woken, but stay asleep, so we won't notice… That some adults in his State

are immune to underage sex with a minor of presumably any age simply by proposing marriage.

5.     The State of Florida has arguably the harshest laws regarding sex offenses involving adults having sex with minors. It has the longest prison minimums and life-time registration regardless of the degree of the charge. It refuses to follow SORNA tier structure because they are not as tough as the state's guidelines. Socially, your life is over, branded with the new scarlet letter. Stigmatized for life, forced to live in certain zones, you may end up under a bridge or in the forest somewhere:

    a.  Labeled, Sex offender,
    b.  Sexual Predator,
    c.  Violent felon of special concern,
    d.  Subject to involuntary, indefinite civil confinement under the Jimmy Rice Act.
    e.  Face years of cognitive sex offender therapy.

6.     That is, unless you "pop the question" ….

7.     Yes, since its inception 177 years ago, Florida is one of many States that "immunize" certain adults to having sex with minors; or in other words, they allow minors to marry, have sex and procreate with certain adults under a version of child marriage laws. Prior to 2018 (the scope of Plaintiff's conviction), pregnant children of any age in Florida could get married with a judge's permission. In 2018, Florida addressed Child Marriage and made sweeping law changes but did not ban it

outright. (See https://www.reuters.com/article/us-usa-childmarriage-florida/florida-approves-limit-but-not-ban-on-child-marriage-idUSKCN1GM0ET). A study found that between 2000 and 2019 there were 16,139 child marriages in Florida. 2,798 (17%) of those marriages would have met the definition of sex crimes if marital exemption was not in place. None of those were prosecuted for sex crimes. (See EX. A, https://www.jahonline.org/article/S1054-139X(21)00552-8/fulltext). (Heretofore known as EX. A.). **Plaintiff is as innocent as those immunized.**

8.    The requirements for the application under the child marriage exception are:

    a. Pregnancy (any age minor at the time of Plaintiff's conviction).
    b. Certification of pregnancy by a doctor.
    c. Permission from parent.
    d. Permission from the Court.

9.    It turns out that the State of Florida is quite "traditional" in nature. It could be said Florida allows marriage "for love", acceptable at any age.  So, what sets the immunized adults apart from "popping the question"? Take Sherry Johnson, star witness, the godmother of child marriage reform, was born circa 1960. She was 9 when she began being raped by her 18-year-old pastor and 10 when the Court allowed her, now pregnant, to marry the then 20-year-old (See EX. B https://en.wikipedia.org/wiki/Sherry_Johnson). (Heretofore known as EX. B.). In her book, *Forgiving the Unforgivable,* Johnson gave her negative opinion on child marriage on the basis that children cannot enter into other legal contracts; *"You*

*can't get a job, you can't get a car, you can't get a license, you can't sign a lease, so why allow someone to marry when they're still so young?" Johnson also believes that permitting child marriage allows rapists to escape the legal consequences of their crimes by marrying their victims. Speaking on how she was forced to marry the man who raped her, Johnson said, "No one actually protected me. They protected him by putting the handcuffs on me, instead of putting the handcuffs on him, and he was the rapist."*

10.    The State of Florida says that a minor of a certain age "cannot consent to sex" with an adult. So, we can infer that, the marriage exception gives a parent the right to consent for a minor child to have sex with an adult, correct? This too is incorrect. (See https://www.cbsnews.com/miami/news/mother-arrested-for-pimping-out-teen-daughter/). This woman got 3 years in prison for pimping out her teen daughter. Who is to say the mother was not trying to get them pregnant so she could marry them off? Was she asked this by the prosecutor?

11.    Speaking of prosecutors, by not giving those adults convicted of sex offenses with minors the option of marriage before being charged or offering it as a get-out-of-jail-free-card, they are not disclosing exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and due process under the 14th Amendment of the Constitution. The prosecution has a constitutional duty of due process to disclose material evidence favorable to a defendant. The Brady material has three

components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued". *Strickler v. Greene*, 527 U.S. 263 (1999).

12.    Florida's Child Marriage exception is an unconstitutional "loophole". Florida cannot pick and choose who they criminally charge for statutory offenses, either everyone is guilty of a crime, or no one is. The "nature of the charge" is not fully developed of the "loophole" is not made available to all charged. The 6th Amendment states "no indictment is sufficient if it does not allege "all the ingredients" that constitute a crime. If an offense cannot be accurately and clearly described without an allegation that the accused is not within an exception contained in the statutes, an indictment that does not contain such an allegation is defective.

13.    FL.S. § 741.0405 is also an unlawful Bill of Attainder. The U.S. Constitution provides that "[n]o Bill of Attainder or ex post facto Law shall be passed." U.S. Const, art. I, § 9, cl. 3. A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468, 97 S.Ct. 2777, 2803, 53 L.Ed.2d 867 (1977).

14.    The pertinent part of FL.S. § 741.0405 reads:

**When marriage license may be issued to persons under 18 years. —**

(1)    If either of the parties shall be under the age of 18 years but at least 16 years of age, the county court judge or clerk of the circuit court shall issue a license for the marriage of such party only if there is first presented and filed with him or her the written consent of the parents or guardian of such minor to such marriage, acknowledged before some officer authorized by law to take acknowledgments and administer oaths. However, the license shall be issued without parental consent when both parents of such minor are deceased at the time of making application or when such minor has been married previously.

(2)    The county court judge of any county in the state may, in the exercise of his or her discretion, issue a license to marry to any male or female under the age of 18 years, upon application of both parties sworn under oath that they are the parents of a child.

(3)    When the fact of pregnancy is verified by the written statement of a licensed physician, the county court judge of any county in the state may, in his or her discretion, issue a license to marry:

(a)    To any male or female under the age of 18 years upon application of both parties sworn under oath that they are the expectant parents of a child; or

(b)    To any female under the age of 18 years and male over the age of 18 years upon the female's application sworn under oath that she is an expectant parent.

(4)    No license to marry shall be granted to any person under the age of 16 years, with or without the consent of the parents, except as provided in subsections (2) and (3).

15.    *Houston v. Williams* 547 F.3d 1357 (11th Cir. 2008) is the precedent Appellant

needs to overcome to prove that FL.S. § 943.0435 and FL.S. § 775.21 are *punitive*

in nature as opposed to what the Statutes claim in their legislative intent, they are

"not a punishment, or a sentence, but regulatory".

16.    To definitively prove that the registration statutes FL.S. § 943.0435 and FL.S. §

775.21 are *punitive* in nature I compare consequences of violations of the statute of

conviction, FL.S. § 800.04(6)(b) with the *hidden* sex statute FL.S. § 741.0405,

a.k.a. Child Marriage Law, **for the exact same crimes.**

17.    Prior to 2018 (the scope of Plaintiff's 2008 conviction), pregnant children of any

age in Florida could get married with 1) pregnancy 2) doctor certification of

COMPLAINT

8

pregnancy 3) parents' permission 4) judge's permission. This results in a *pardon* from registration under FL.S. § 943.0435 and FL.S. § 775.21.

18.     Under *Houston,* FL.S. § 741.0405 is an unlawful Bill of Attainder. Arguendo, we must assume that step 5) from above would amount to the Judge *not granting* the marriage license and resulting in conviction and being subject to FL.S. § 943.0435 and FL.S. § 775.21. A single judge, without provision of the protections of a judicial trial has the power to *pardon* or *punish*.

19.     FL.S. § 741.0405 neither states legislative intent nor the source of the power to pardon certain individuals from conviction and registration under FL.S. § 943.0435 and FL.S. § 775.21 or violate *their* "stated" legislative intent. **The registry is punishment.**

20.     Under *Houston,* "there is no rational relationship between the disparity of treatment and some legitimate governmental purpose, and proceeds along suspect lines", an equal protection violation.

21.     The question of whether the States Policy to Prosecute some adults for sex with minors and yet, immunize others from the same or worse crimes under the Child Marriage Laws FL.S. § 741.0405 violates equal protection is subject to rational basis review. *Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 457-58, 108 S.Ct. 2481, 2487, 101 L.Ed.2d 399 (1988). Rational basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of

legislative choices." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 2100-01, 124 L.Ed.2d 211 (1993); see also *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

22.    However, that policy to Prosecute some adults for sex with minors and yet, immunize others from the same or worse crimes under the Child Marriage Laws FL.S. § 741.0405 affects fundamental rights and proceeds along suspect lines. "Nor does it authorize "the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976)."

23.    FL.S. § 741.0405 States no legitimate governmental purpose with the States policy to immunize some adults from sex with minors or worse crimes and there is no rational relationship between the disparity of treatment between those who are prosecuted under FL.S. § 800.04, FL.S. § 943.0435 and FL.S. § 775.21 and some legitimate governmental purpose. Policy determinations "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993).

24.     Since the Statutes are unconstitutional, Plaintiff's 7 VOP while he was on probation from 2008 to 2013 were unconstitutional under the fourth amendment as no probable cause existed.

25.     Since the Statutes are unconstitutional, probable cause did not exist to initially arrest Plaintiff for any crime. Another 4th Amendment violation.

26.     The Child Marriage exception is in direct violation of the spirit of Florida's Savings Clause. The "Savings Clause" - Article X, section 9 - was added to the Florida Constitution in 1885. It reads, "Repeal or amendment of a criminal statute shall not affect prosecution or punishment for any crime previously committed," which has been interpreted to mean that ameliorative changes to criminal laws may not be applied retroactively. The Savings Clause was a response to a high-profile case in which a man who was charged with assault could not be prosecuted because the legislature repealed the assault statute and failed to "save" prosecutions of offenses committed before the repeal.

27.     The spirit of the Clause is to prevent one statute, through amendment or repeal, to "save" someone convicted of a crime under that statute or another one. It is plain to see, the Child Marriage exception "saves" those that would normally be convicted under sex offender laws from being convicted.

28.     Plaintiff brings this action under 42 U.S.C. § 1983 against Defendants' unlawful deprivation of Plaintiffs' rights under the Fourth, sixth and Fourteenth Amendments

to the United States Constitution. This Court can exercise its jurisdiction under § 1983 for several reasons:

1. His conviction has expired.
2. He is NOT challenging his conviction.
3. He is NOT challenging his sentence*.
4. He is NOT challenging the statute of conviction.
5. He is NOT asking for monetary damages.
6. He is asking to be "immunized" in accordance with others who have been immunized. (See 14th Amendment US Const.).
7. FL.S. § 943.0435 and FL.S. § 775.21 are not punishments.

* § 943.0435(e)(12) *The designation of a person as a sexual offender is not a sentence or a punishment but is simply the status of the offender which is the result of a conviction for having committed certain crimes.*

29.    Alternatively, since Habeas Relief is currently unavailable to Plaintiff (See 2:17-CV-396-JLB-NPM), this Court can <u>also</u> allow Plaintiff to challenge the statute of conviction FL.S. § 800.04(6)(b) and exercise jurisdiction over this case under 42 U.S. CODE § 1983 if the Court finds the "favorable determination" standard in *Heck v. Humphrey et al* 512 U.S. 477 (1994) 114 S. Ct. 2364 *can* also be overcome. All pleadings "must be construed so as to do justice." Fed. R. Civ. P. 8(e). That command applies with greatest force in cases filed by *pro se* litigants, whose filings are liberally construed and whose complaints, "however inartfully pleaded", must be held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks omitted). Liberal

construction, in more concrete terms, means that federal courts must sometimes look beyond the labels used in a pro se party's complaint and focus on the content and substance of the allegations. See *Means v. Alabama*, 209 F.3d 1241, 1242 (11th Cir. 2000) ("[F]ederal courts must look beyond the labels of motions filed by *pro se* inmates to interpret them under whatever statute would provide relief.").

30.    The 11th Circuit HAS clearly "weighed in" and his case DOES meet the qualifications to adopt the exception in *Spencer,* according to *Reilly* and *Harden*. *Harden v. Pataki*, 320 F. 3d 1289 (11th Cir. 2003) (*Heck* does not bar an action if a habeas remedy is unavailable) **VS.** *Reilly v. Herrera,* 622 Fed. Appx. 832 (11th Cir. 2015) (must demonstrate diligence through 'exhaustion of state remedies').

31.    This Court can join the circuits that have reached this conclusion based on the Supreme Court's subsequent decision in *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). See, e.g., *Wilson v. Johnson*, 535 F.3d 262, 266-68 (4th Cir. 2008); *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 603 (6th Cir. 2007); *Harden v. Pataki*, 320 F.3d 1289, 1298-99 (11th Cir. 2003); *Nonnette v. Small,* 316 F.3d 872, 876-77 (9th Cir. 2002); *Huang v. Johnson*, 251 F.3d 65, 75 (2d Cir. 2001); *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir. 1999). In *Spencer*, a majority of the Court affirmed the dismissal for mootness of a habeas claim brought by a petitioner who was no longer in custody because the petitioner had failed to show that he suffered continuing collateral consequences from his

parole revocation following his release. *Id. at 14-16, 118 S.Ct. 978*. In a concurrence, four Justices articulated an additional reason why this result was correct — "a former prisoner, no longer `in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy," and thus "the answer to Spencer's argument that his habeas claim cannot be moot because *Heck* bars him from relief under § 1983 is that *Heck* has no such effect." *Id*. at 21, 118 S.Ct. 978 (Souter, J., concurring).

## JURISDICTION AND VENUE

32.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, in that this action seeks to redress the deprivation, under color of laws, statutes, and usages by the Defendants as they execute, administer, and enforce the complained-of laws, of the rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

33.    This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

34.    This Court has personal jurisdiction over the Defendants Ron DeSantis, the Governor of Florida, Ashley Moody and Ricky D. Dixon, who are sued in their official capacities as elected and appointed government officials because, *inter alia,*

they act under the color of laws, policies, customs and/or practices of the State of Florida and/or within the geographic confines of and reside in the State of Florida.

35.     Venue is proper pursuant to 28 U.S.C. Code § 1391, because the Defendants execute, administer and enforce the complained-of laws against Plaintiff in this District, and because the events giving rise to this action are harming Plaintiff in this District.

## PARTIES

36.     Plaintiff, pro se, Louis Matthew Clements is a United States Citizen, and a resident of Fort Myers, Florida. In 2007, Mr. Clements had what was described by the minor "victim" as a 9-month consensual, romantic relationship, initiated by the victim, until she became jealous of his traveling back and forth to NYC for auditions, accused him of being unfaithful, and turned him into authorities out of spite. In 2008, he was convicted through a coerced plea deal of one 2nd Degree felony of Lewd and Lascivious Conduct a.k.a. FL.S. § 800.04(6)(b) and sentenced to Sex Offender Probation for a term of 5 years.  He is subject to lifetime registration on the Florida Sex Offender Registry and the conditions outlined in FL.S. § 943.0435 and FL.S. § 775.21. Since being sentenced, Plaintiff has filed countless state and Federal Cases in order to fight his conviction. During that time, The State could have cleared him and revealed to him the exculpatory evidence revealed in this suit. They have not. They continue to conceal it.

37.    ADDITIONALLY, while Plaintiff was on sex offender probation from 2008-2013 as a consequence of his conviction, he served 240 days needlessly in jail for 7 trumped up VOP related to his defective ankle monitor. He filed several state and Federal Cases over those, always to no avail. No court ever appointed counsel and no paid attorneys ever accepted pro bono representation. This is a conspiracy.

38.    Defendant RON DESANTIS is the Governor of Florida. In DeSantis's official capacity, he is the chief executive of the government of Florida and the chief administrative officer of the state and serves as chair when the Governor and the Florida Cabinet sit as a decision-making body in various constitutional roles. The Governor has the power to execute Florida's laws. The Governor also has the power of reorganization through executive order.

39.    Defendant ASHLEY MOODY is the Attorney General of Florida. In Moody's official capacity, Moody is the State's Chief Legal Officer and head of the Florida Department of Legal Affairs. In that capacity, Moody is presently enforcing the laws, customs, practices and policies complained of in this action.

40.    Defendant RICKY D. DIXON is the Secretary of the State of Florida Department of Corrections. In Inch's official capacity, the Department of Corrections has "supervisory and protective care, custody, and control of the inmates, buildings, grounds, property, and all other matters pertaining to the following facilities and programs for the imprisonment, correction, and

rehabilitation of adult offenders: (a) Department of Corrections adult correctional institutions; (b) Department of Corrections youthful offender institutions; (c) Department of Corrections Mental Health Treatment Facility; (d) Department of Corrections Probation and Restitution Center; (e) Department of Corrections community correctional centers; and (f) Department of Corrections vocational centers." FLA. STAT. ANN. § 945.025(1).

**RE: RELATED CASES**

41.    On 7/12/2022, Plaintiff filed a "successive 3.850" post-conviction relief, coupled with a motion to appoint regional counsel regarding the underlying conviction in the court of conviction, <u>20th Judicial Circuit Court in and For Lee County Florida</u>, unaware that the State had blocked his access to use the Court pro se for no apparent reason:

| 07/20/2015 | Order to Show Cause Filed Why Def. Should Not be Prohibited From Filing Any Further Pro Se Motions | 11 | 🔒 |
|---|---|---|---|
| 07/23/2015 | Response Filed Response to Order to Show Cause/ Pro Se | 4 | 🔒 |
| 07/24/2015 | Order from 2nd DCA Filed Motion for Rehearing or Rehearing En Banc is Denied | 1 | 🔒 |
| 08/06/2015 | Order Filed Prohibiting def. from filing any further pro se motions | 40 | 🔒 |
| 08/06/2015 | Pro- Se Pleading Prohibited Per Judges Order | | |

42.    The trial court predictably ignored both his 3.850 and motion to appoint counsel. Therefore, on 12/28/2022, Plaintiff filed the 3.850 and an emergency injunction

enjoining the State from further enforcing the conviction against him in the Florida

Supreme Court, hoping the Court would accept it as the 3.850 under the guise of it

being a habeas corpus "by nature". The Court accepted filing as case# SC22-1800,

construing is as a Habeas Corpus. Plaintiff has heard nothing from the court, and

they have ignored his pleas to immediately issue the injunction EVEN after being

harassed by the Florida Sheriff Dept. (See Fl. Sup. Ct. Online docket

https://onlinedocketssc.flcourts.org/).

43.     On 1/12/2023, the supreme Court then re-construed SC22-1800 from habeas to

mandamus and transferred it to the 6th cir. ct. of Ap.. pursuant to *Harvard v.*

*Singletary*, 733 So. 2d 1020 (Fla. 1999). For all the ways contained in the dissent of

*Harvard*, The Florida Supreme Courts handling of this case is laughable. They

sluffed off the most important case in 177 years saying they lack the resources and

facilities to conduct fact finding. There is NO fact finding or hearing needed in this

case. They are stalling and purposefully putting Plaintiff in great danger.

44.     Plaintiff is challenging Statutes FL.S. § 741.0405, FL.S. § 943.0435 and FL.S. §

775.21. The State says these statutes are the punishments due to Plaintiffs violation

of FL.S. § 800.04(6)(b). Plaintiff is NOT challenging the statute of conviction. For

that reason and the following reasons, this suit does not run afoul of either the

*Younger* abstention or the *Rooker–Feldman doctrine*.

45.    Plaintiff's conviction is in <u>bad faith</u>. Florida does not care. They have had 14 years to care. By continuing the conviction, they harass him needlessly. The State is <u>too biased</u> to reverse his conviction. The State of Florida has blatantly violated Plaintiffs constitutional rights since conviction, post-conviction to present. The State is now <u>harassing</u> him through the Local Sheriff Dept. Therefore, *Younger v. Harris*, 401 U.S. 37, 54 (1971) should NOT apply.

46.    *"Younger* abstention" applies when three factors are present: (1) there is an ongoing state proceeding; (2) the claim raises important state interests; and (3) the state proceedings provide an adequate opportunity to raise the federal constitutional claims. YET. Federal courts have recognized that *Younger*'s limitation on enjoining pending state criminal prosecutions has a few exceptions, where: (1) there is evidence of state proceedings motivated by bad faith; (2) irreparable injury would occur; or (3) there is no adequate alternative state forum where the constitutional issues can be raised. *Hughes v. Att'y Gen. of Fla.*, <u>377 F.3d 1258, 1263</u> n.6 (11th Cir. 2004). Irreparable injury may be demonstrated upon a showing of "bad faith" or "harassment" by state officials responsible for the prosecution, or of a state law to be applied in criminal proceedings that flagrantly and patently violates express constitutional prohibitions, or of other extraordinary circumstances resulting in irreparable injury, even without bad faith or harassment. *Id.* at 1263 n.7. "Extraordinary circumstances" encompasses, but is not limited to, situations where

a statute flagrantly and patently violates express constitutional prohibitions or where the state decisionmaker was <u>too biased</u> to adjudicate the issues before it. *See id.*

47.     Plaintiffs' suit also does not run afoul of the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine applies when the losing party in state court sues in federal court seeking review of a state court judgment after the state court proceedings had ended. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). *Exxon Mobil*, 544 U.S. at 283 ("[T]he [*Rooker–Feldman*] doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases."); *Target Media*, 881 F.3d at 1285 ("More recently, the Supreme Court concluded that the inferior federal courts had been applying *Rooker–Feldman* too broadly."). In hewing closely to *Exxon Mobil*, the Eleventh Circuit now applies *Rooker-Feldman* only when a party who lost in state court asks a federal court to review and reject a state court's judgment. *Id.* at 1285 – 86. In short, [federal] courts should keep one thing in mind when *Rooker-Feldman* is raised: it will almost never apply. *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021). Plaintiff is not bringing in to question a State Court Final Judgement, he is doing so in his State Supreme Court Habeas proceeding 22SC-1800, therefore the *doctrine* should NOT apply.

## CLAIMS

### COUNT ONE

48.     Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 for violation of the Fourth,

Fifth, Sixth and Fourteenth Amendment's to the U.S. Constitution, which renders

the statutes unconstitutional.

49.     Title 42 U.S.C. Code § 1983 provides that "every person" who acts under color

of state law to deprive another of a constitutional right shall be answerable to that

person in a suit for damages.

### COUNT TWO

50.     Plaintiffs assert a claim pursuant to 42 U.S.C. § 1983 for violation of the Fifth

and Fourteenth Amendment to the U.S. Constitution.

51.     The Fifth Amendment and Fourteenth Amendment to the United States

Constitution declare that governments cannot deprive any person of "life, liberty, or

property" without due process of law. The Eighth Amendment (Amendment VIII)

of the United States Constitution prohibits the federal government from imposing

excessive bail, excessive fines, or cruel and unusual punishment. The U.S. Supreme

Court has ruled that this amendment's Cruel and Unusual Punishment Clause also

applies to the states.

52.    The Fourteenth Amendment to the U.S. Constitution forbids states from

"deny[ing] to any person within its jurisdiction the equal protection of the laws."

U.S. CONST. amend. XIV, § 1.

53.    Defendants, acting under color of state law, have deprived Plaintiff of his right

to protection from unconstitutional search and seizure during his arrest that lacked

probable cause.

**CLAIM THREE**

54.    Plaintiffs assert a claim pursuant to 42 U.S.C. § 1983 for violation of the Fourth

Amendment to the U.S. Constitution.

55.    The Fourth Amendment to the United States Constitution protects "the right of

the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures, shall not be violated, and no Warrants shall

issue, but upon probable cause, supported by Oath or affirmation, and particularly

describing the place to be searched, and the persons or things to be seized".

**CLAIM FOUR**

56.    Plaintiffs assert a claim pursuant to 42 U.S.C. § 1983 for violation of the Sixth

Amendment to the U.S. Constitution.

57.    The Sixth Amendment to the US Constitution States, "The constitutional right to

be informed of the nature and cause of the accusation entitles the defendant to insist

that the indictment apprise him of the crime charged with such reasonable certainty

that he can make his defense and protect himself after judgment against another prosecution on the same charge. *United States v. Cruikshank*, 92 U.S. 542, 544, 558 (1875); *United States v. Simmons*, 96 U.S. 360 (1877); *Bartell v. United States*, 227 U.S. 427 (1913); *Burton v. United States*, 202 U.S. 344 (1906). No indictment is sufficient if it does not allege all of the ingredients that constitute the crime. Where the language of a statute is, according to the natural import of the words, fully descriptive of the offense, it is sufficient if the indictment follows the statutory phraseology, *Potter v. United States*, 155 U.S. 438, 444 (1894), but where the elements of the crime have to be ascertained by reference to the common law or to other statutes, it is not sufficient to set forth the offense in the words of the statute. The facts necessary to bring the case within the statutory definition must also be alleged. *United States v. Carll*, 105 U.S. 611 (1881). If an offense cannot be accurately and clearly described without an allegation that the accused is not within an exception contained in the statutes, an indictment that does not contain such allegation is defective. *United States v. Cook*, 84 U.S. (17 Wall.) 168, 174 (1872). Despite the omission of obscene particulars, an indictment in general language is good if the unlawful conduct is described so as reasonably to inform the accused of the nature of the charge sought to be established against him. *Rosen v. United States,* 161 U.S. 29, 40 (1896). The Constitution does not require the government to furnish a copy of the indictment to an accused. *United States v. Van Duzee*, 140

U.S. 169, 173 (1891). The right to notice of accusation is so fundamental a part of procedural due process that the states are required to observe it. *In re Oliver*, 333 U.S. 257, 273 (1948); *Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *Rabe v. Washington*, 405 U.S. 313 (1972).

## CLAIM FIVE

58.     Plaintiff fully incorporates #'s 18 and 19 from above as fully incorporated within.

59.     Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 for violation of U.S. Const, art. I, § 9, cl. 3 as unlawful Bill of Attainder and ex post facto Law.

60.     U.S. Const, art. I, § 9, cl. 3 reads that "[n]o Bill of Attainder or ex post facto Law shall be passed." A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468, 97 S.Ct. 2777, 2803, 53 L.Ed.2d 867 (1977).

61.     FL.S. § 741.0405 in relation to FL.S. § 943.0435 and FL.S. § 775.21 singles out ascertainable members of a group who alone are subject to its provisions and inflicts punishment on them without judicial action, and thus, the Policy is an unlawful bill of attainder under the U.S. and Florida Constitutions.

**CLAIM SIX**

62.     Plaintiff asserts a claim pursuant to FL.S. § 760.01 for violation of direct

violation of the spirit of Florida's Savings Clause. The "Savings Clause"

63.     FL.S. § 741.0405 has been amended many times over the years. It currently

"saves" those convicted under the Florida sex offender statutes (specifically FL.S. §

800.04(6)(b)) from being subject to registration under FL.S. § 943.0435 and FL.S. §

775.21.

64.     Article X, section 9 - was added to the Florida Constitution in 1885. It reads,

"Repeal or amendment of a criminal statute shall not affect prosecution or

punishment for any crime previously committed," which has been interpreted to

mean that ameliorative changes to criminal laws may not be applied retroactively.

The Savings Clause was a response to a high-profile case in which a man who was

charged with assault could not be prosecuted because the legislature repealed the

assault statute and failed to "save" prosecutions of offenses committed before the

repeal.

**PRAYER FOR RELIEF**

65.     A controversy exists on whether FL.S. § 741.0405, FL.S. § 943.0435 and FL.S.

§ 775.21 are constitutional. Without such relief, the Defendants in every county in

Florida will continue as they do now, running roughshod over Plaintiff, arresting

him without probable cause and without any penalty or checks and balances.

COMPLAINT
25

66.     A declaration from this Court would settle this issue.

67.     A declaration from this Court would also serve a useful purpose in clarifying the legal issues in dispute.

68.     This Court could Order Governor DeSantis to use his executive power to reorganize/clarify/rework FL.S. § 741.0405, FL.S. § 943.0435 and FL.S. § 775.21 they are Constitutional.

69.     In the absence of an injunction, FL.S. § 741.0405, FL.S. § 943.0435 and FL.S. § 775.21 would continue to be enforced unfettered against Plaintiff.

70.     Injunctive Relief by this Court enjoining the State Courts from enforcing this statute would allow him to lawfully sue for malicious prosecution.

71.     The Plaintiff would continue to suffer irreparable harm if this Court does not issue an injunction.

72.     There is no remedy at law because only a declaration and injunction would allow Plaintiff to be free of ongoing unconstitutional harassment by the State. To continue to force Petitioner to comply with FL.S. § 943.0435 and FL.S. § 775.21 is tantamount to bad faith, harassment by a State governing body too biased to adjudicate the issues before it. *Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258, 1263 n.6 (11th Cir. 2004).

WHEREFORE, Plaintiff prays that this Honorable Court:

1. As this complaint is obviously unconstitutional on its face, Issue immediate emergency preliminary, temporary and permanent injunctions enjoining Defendants, DeSantis, Moody and Dixon, in their respective capacities, from enforcing FL.S. § 741.0405, FL.S. § 943.0435 and FL.S. § 775.21 against Plaintiff.

2. Enter the following:

   (a)      A declaratory judgment that FL.S. § 741.0405, FL.S. § 943.0435 and FL.S. § 775.21 and all other related Florida laws are null and void because they (1) violate the civil rights protection guaranteed by the Constitution and (ii) infringe upon the people's rights to be free from unlawful search, seizure and confinement by any Florida State law enforcement agent; and

   (b)      Issue preliminary and permanent injunctions against the Defendants and the pertinent judicial officers in the Judicial Branch of Florida, from enforcement of FL.S. § 741.0405, FL.S. § 943.0435 and FL.S. § 775.21 and all other related Florida statutory language against Plaintiff.

3.      Grant such other and further relief, in law and equity, as the Court deems just and proper.


Respectfully submitted,

Dated: 1/11/2023          By: _____

                         LOUIS MATTHEW CLEMENTS
                         Plaintiff, Pro se



U.S. POSTAGE
$6.64
FCMF  RDC 23
Orig: 33912
Dest: 32301
01/13/23
R2305H128653   2000144308

CPU



UNITED STATES COURTHOUSE

111 N. ADAMS St.

Tallahassee, FL 32301



7022 2410 0001 5610 7583



Mathew Clement
Penny St.
Mars, FL 33901